UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ILLYA S. TURNER,<br>　　　　Plaintiff,<br>　　v.<br>ANDREW SAUL,<br>　　　　Defendant. | Case No. 19-cv-00693-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 14, 16 |

Plaintiff Illya S. Turner appeals a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. The parties have filed cross-motions for summary judgment. Dkt. Nos. 14, 16.

The matter was submitted without oral argument. Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants in part and denies in part Mr. Turner's motion for summary judgment and grants in part and denies in part the Commissioner's cross-motion for summary judgment.[1]

## I. BACKGROUND

Mr. Turner seeks disability benefits beginning October 10, 2010. AR 45. He applied for benefits on August 24, 2015. *Id.* An Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on May 8, 2018. AR 45–53. The ALJ found that Mr. Turner had the following severe impairments: degenerative disc disease of the cervical spine; history of left

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 9, 10.

knee partial MCL tear; traumatic instability of left thumb joint; right hand osteoarthritis; history of hand fractures; and gastro esophageal reflux disease ("GERD"). AR 47. The ALJ concluded that Mr. Turner did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *Id.* The ALJ then determined that Mr. Turner's residual functional capacity ("RFC") limited him to medium work, except that he could frequently climb, balance, stoop, crouch, and crawl; occasionally climb ladders and kneel; and frequently reach, handle, finger, and feel. AR 48. The ALJ concluded that Mr. Turner was not disabled because he was capable of performing jobs that exist in the national economy, such as floor waxer, dining room attendant, and laundry worker. AR 51–52.

The Appeals Council denied Mr. Turner's request for review of the ALJ's decision. AR 1–3. Mr. Turner filed this action on February 7, 2019. Dkt. No. 1.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## III. DISCUSSION

Mr. Turner contends that the ALJ erred in multiple respects: (1) the ALJ erred in finding Mr. Turner's testimony not entirely credible or consistent with the record; (2) the ALJ erred at step

2

four by failing to account for Mr. Turner's grasping and gripping limitations in the RFC; and (3) the ALJ erred at step five by providing the vocational expert with hypotheticals that did not account for Mr. Turner's grasping and gripping limitations, and also by relying on testimony from the vocational expert that was inconsistent with the Dictionary of Occupational Titles ("DOT"). The Court considers each issue below.

### A. The ALJ's Assessment of Mr. Turner's Credibility

In finding that Mr. Turner is not disabled, the ALJ determined that "the claimant's statements concerning the intensity, persistence, and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record," based primarily upon his conservative treatment with prescription medication and his condition remaining stable, as well as his "ability to participate in his daily activities." AR 48–49. Mr. Turner argues that the ALJ erred in determining that his hearing testimony was less than fully credible. Dkt. No. 14 at 7–8.

In evaluating the credibility of a claimant's testimony regarding subjective symptoms, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal citations and quotation marks omitted). The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation omitted). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity . . . ." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (internal citation omitted). At the second step, unless there is affirmative evidence showing that the claimant is malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996). "General findings are insufficient; rather, the ALJ

3

1 must identify what testimony is not credible and what evidence undermines the claimant's

2 complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

### 1. Objective medical evidence of underlying impairment

The ALJ concluded that Mr. Turner's history of degenerative disc disease of the cervical spine, left knee partial MCL tear, traumatic instability of left thumb joint, right hand osteoarthritis, history of hand fractures, and GERD could reasonably be expected to cause the symptoms he alleges, including significant chronic pain. AR 48–49. Neither party challenges this conclusion.

### 2. The ALJ's analysis regarding the severity of symptoms

The ALJ determined that Mr. Turner's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence and other evidence in the record. In particular, the ALJ concluded that Mr. Turner's medical records indicating no significant or abnormal findings on multiple occasions, conservative treatment of ibuprofen and muscle relaxers, and Mr. Turner's own statements indicating improvement in his conditions were inconsistent with the reported severity of his symptoms. AR 49. Because the ALJ did not find that Mr. Turner was malingering, she was required to provide clear and convincing reasons to justify her rejection of Mr. Turner's testimony about the severity of his symptoms. The Court concludes that the ALJ has met this standard.

#### a. Objective medical evidence

Here, the ALJ considered the results of Mr. Turner's neck CT scan taken on July 3, 2016, following a visit to the emergency room after he was struck on the head with a wooden parking gate stick, jarring his neck. AR 49. The CT scan results revealed "no evidence of fracture or subluxation" and "unremarkable" paraspinal soft tissues and partially visualized lung apices. AR 271. However, the scans also revealed "[s]evere disc space narrowing at C5-6" and "[m]arginal endplate spurring and uncinate riding contribute to mild right and moderate-severe left neural foraminal narrowing at the C5-6 level." *Id.* Overall, the physician reviewing the CT scans concluded that the scans showed "degenerative and hypertrophic changes without evidence of superimposed acute abnormality." AR 271.

Mr. Turner contends that the ALJ omitted from her opinion the portion of the CT scan

4

findings of "severe disc space narrowing at C5-6" and "marginal endplate spurring and uncinated ridging contributing to mild right and moderate-severe left neural foraminal narrowing at the C5-6 level." Dkt. No. 18 at 7. The ALJ's opinion relied on the overall impression from the CT scan indicating "degenerative and hypertrophic changes," AR 49, but those "degenerative and hypertrophic changes" would appear to include the very findings Mr. Turner says the ALJ omitted. The Court therefore disagrees with Mr. Turner's contention that the ALJ improperly omitted portions of the CT scan findings in her opinion.

### b. Medical record evidence

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis. . . . The ALJ is permitted to consider lack of treatment in [her] credibility determination." *Burch*, 400 F.3d at 681. Here, the ALJ specifically noted that Mr. Turner received conservative treatment consisting of ibuprofen and a muscle relaxer, that his condition remained stable, and that he reported improvement. AR 49.

The ALJ cited Mr. Turner's medical records from June 2015 to June 2017 as evidence that undermines Mr. Turner's testimony concerning his pain and other symptoms. *Id.* First, the ALJ noted that on June 17, 2015, Mr. Turner saw Barbara Wismer, MD and reported sudden onset of low back pain after being scratched by a cat on May 30, 2015. *Id.* (citing AR 238–40). Mr. Turner denied experiencing any lower extremity numbness, weakness, or tingling, and although he moved stiffly, an examination revealed no lumbar spinal stenosis or paraspinous muscle tenderness. *Id.*; AR 239–40. Mr. Turner reported significant improvement in his back after using heat, sleeping, staying in certain positions, and taking four to six aspirin daily. AR 49, 238–40. Dr. Wismer diagnosed Mr. Turner with "backache unspecified," esophageal reflux, hyperlipidemia, and "pain in joint involving lower leg," although she observed that he "[h]as some vague minor [right] knee symptoms that do not affect function." AR 238, 239. Mr. Turner further informed Dr. Wismer that he was "on light duty with GA" despite Dr. Wismer's "understanding last visit that [Mr. Turner was] cleared to work 2 [months] after visit." *Id.* She prescribed Mr. Turner ibuprofen. AR 238.

5

The ALJ also noted Mr. Turner's visit with Dr. Wismer on October 20, 2015. AR 49 (citing AR 235–37). Mr. Turner reported to Dr. Wismer that he had gone to the hospital emergency room three days prior with acute lower back pain. AR 236. According to the hospital's note, there were no significant findings, and Mr. Turner was prescribed ibuprofen. *Id.* Mr. Turner reported improvement in his back pain. *Id.* Dr. Wismer recommended continuing with ibuprofen, movement classes, and gentle stretching. AR 235.

The ALJ further considered Mr. Turner's visit to the emergency room on July 3, 2016 following an incident where he was struck on the head with a wooden parking gate stick, jarring his neck. AR 49 (citing AR 269–71). Mr. Turner complained of extreme neck pain and exhibited limited range of motion and C-spine tenderness in his neck, but he denied any head or back pain and exhibited no C-spine tenderness in his back. AR 269–70. Following a CT scan that found "no acute fracture findings," Mr. Turner was discharged with anti-inflammatories, pain medication, and a muscle relaxer. AR 270.

The ALJ also considered the treatment notes[2] for Mr. Turner's visit to Thai Lee, MD on July 6, 2016 for follow-up after the July 3, 2016 emergency room visit. AR 49 (citing AR 272–75). With respect to his neck injury, Mr. Turner reported "residual pain in the neck area" but no changes in vision or headaches. AR 273. Mr. Turner also complained of worsening pain and decreased range of motion in his right hand and right knee and requested a physical therapy referral, as it had provided him "with some relief" in the past. AR 272–73. Mr. Turner reported taking ibuprofen as needed for his hand and knee. *Id.* Upon examination, Mr. Turner exhibited tenderness to touch in his right hand, wrist, and palm, and decreased range of motion in his right hand and wrist, especially with respect to flexion and grip. AR 274. Mr. Turner also exhibited tenderness in his right knee, with a mildly positive McMurray test and a negative Lachman test. *Id.* For Mr. Turner's hand and knee issues, Dr. Lee referred him to physical therapy and recommended continuing with ibuprofen as needed, as well as "ginger, gingko, and chondrointin glucosamine for joint/bone health." AR 272. Dr. Lee made no specific recommendations with

---

[2] The notes indicate that Mr. Turner had missed his previous four appointments. AR 272.

respect to Mr. Turner's neck pain. *See id.* The treatment notes do not mention any back pain. *See* AR 272–73.

Last, the ALJ considered Mr. Turner's June 5, 2017 visit with Joanna Eveland, MD. AR 49 (citing AR 393–95). Mr. Turner complained of heartburn only. AR 393. Dr. Eveland's treatment notes indicate that Mr. Turner's knee was "[s]table" and that he "[r]arely needs ibuprofen." *Id.* Dr. Eveland refilled his ibuprofen and pantoprazole sodium prescriptions. *Id.* Dr. Eveland's notes do not mention any hand or back pain. *See* AR 393–95. The June 5, 2017 visit is the most recent doctor's visit in the administrative record. *See* AR 56–57.

Mr. Turner argues that the ALJ's specific consideration of the above evidence constituted improper "cherry-picking." Dkt. No. 18 at 6–8. In particular, Mr. Turner takes issue with the ALJ's discussion of the October 2015 visit, arguing that the ALJ ignored the portion of the treatment notes stating that Mr. Turner "winced when standing and that he had mild to moderate tenderness over LSS and paraspinous muscles." *Id.* at 7 (discussing AR 236). But Dr. Wismer's treatment notes also state that Mr. Turner nevertheless reported improvement in his back pain during that visit, and the ALJ's reliance on that statement was reasonable. Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

Similarly, Mr. Turner criticizes the ALJ for omitting the portion of the treatment notes for the July 6, 2016 visit stating that Mr. Turner reported a lack of improvement in his hand and knee pain and that a physical examination revealed tenderness, decreased range in motion, and a mildly positive McMurray test. *Id.* at 7–8. However, Mr. Turner's most recent doctor's visit in June 2017 showed that Mr. Turner's knee was stable and that he rarely required ibuprofen for addressing his knee pain. AR 56–57. Moreover, at that June 2017 visit, Mr. Turner did not complain about hand, neck, or back pain. *See id.* Such recent evidence of improvement was therefore a clear and convincing reason to reject Mr. Turner's testimony concerning his pain and limitations. Additionally, the ALJ relied on medical evidence showing that Mr. Turner's pain was managed with ibuprofen, and that his medical providers never prescribed any other pain medication. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

("Impairments that can be controlled effectively with medication are not disabling.").

Therefore, the Court finds that ALJ did not err in concluding that the medical evidence was inconsistent with the severity of Mr. Turner's reported symptoms. The record also reflects that the ALJ accounted for Mr. Turner's limitations by acknowledging that he could only perform medium work with certain postural and manipulative limitations. AR 18.

### c. Activities of daily living

An ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Molina v. Astrue*, 764 F.3d 1104, 1112–13 (9th Cir. 2012) (internal quotation marks and citations omitted). A claimant's daily activities may support an adverse credibility finding if the claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The Ninth Circuit has recognized that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations" and thus held that "[o]nly if [the claimant's] level of activity were inconsistent with [his] claimed limitations would these activities have any bearing on [the claimant's] credibility." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998)) (internal quotation marks omitted).

Here, Mr. Turner testified at the hearing that he spends most of his time at home in bed or sitting, watching television or surfing the Internet. AR 76–77. He stated that somebody else typically handled grocery shopping for him, and that although he was capable of going to the store himself, he required someone to accompany him to carry the groceries. AR 77. Mr. Turner also testified that he cooked occasionally when he felt able to do so, but that he did not do chores such as vacuuming, which would exhaust him. *Id.* His ability to follow through and complete tasks varied. AR 77–78.

The ALJ found Mr. Turner's ability to participate in activities of daily living inconsistent with the pain and severity of symptoms he alleged. AR 49. However, the ALJ did not explain

how these activities of daily living, as Mr. Turner described them in his hearing testimony, are inconsistent with his asserted impairments. Merely because a claimant carries on some daily activities "does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. As the Commissioner acknowledges, the ALJ did not specify which activities of daily living undermined Mr. Turner's credibility, much less discuss the evidence concerning activities of daily living. Dkt. No. 16 at 8. However, as described above, the ALJ provided other clear and convincing reasons for discrediting Mr. Turner's testimony, rendering this error harmless.

The Court therefore finds that the ALJ provided clear and convincing reasons for her disability determination based on Mr. Turner's medical records and the objective medical evidence. Any error committed in assessing Mr. Turner's credibility based on unspecified activities of daily living was harmless because other evidence in the record supports the ALJ's determination. The Court denies Mr. Turner's summary judgment motion and grants the Commissioner's summary judgment motion on this point.

### B. The ALJ's RFC Analysis and Hypotheticals to the Vocational Expert
#### 1. Mr. Turner's RFC

The ALJ determined that Mr. Turner's RFC limited him to medium work, except that he could frequently climb, balance, stoop, crouch, and crawl; occasionally climb ladders and kneel; and frequently reach, handle, finger, and feel. AR 48. The RFC did not include any express limitations with respect to grasping and gripping. *Id.* The ALJ's hypotheticals to the vocational expert likewise did not include any grasping or gripping limitations. AR 79–82.

"[A]n ALJ is not free to disregard properly supported limitations." *Robbins v. SSA,* 466 F.3d 880, 886 (9th Cir. 2006). Mr. Turner argues that in formulating the RFC and in posing hypotheticals to the vocational expert, the ALJ failed to properly account for the grasping and gripping limitations described in the opinion of consultative examiner Teresita Degamo, MD—an opinion to which the ALJ gave great weight. Dkt. No. 14 at 5–7; AR 50 (opining that Mr. Turner

9

United States District Court
Northern District of California

"should limit forceful grasping or gripping to occasionally"). Instead of including a grasping or gripping limitation in the RFC or in the hypotheticals to the vocational expert, the ALJ stated: "The limitation to occasional forceful grasp/grip is addressed by the limitation to medium work, which only requires occasional handling of 50 pounds." *Id.* at 6 (citing AR 50). Mr. Turner says that this finding was erroneous for two reasons. Dkt. No. 14 at 6. First, the definition of "medium work" as described in 20 C.F.R. § 416.967 does not address handling at all. Second, Mr. Turner says, medium work fails to adequately address his grasping or gripping limitations because grasping or gripping may be done independently of lifting, carrying, pushing, or pulling even a negligible amount of weight.

In response, the Commissioner argues that the ALJ properly accounted for any grasping or gripping limitations by limiting Mr. Turner to medium work. The Commissioner contends that the meaning of "forceful" in Dr. Degamo's opinion is an ambiguity or conflict that "the ALJ appropriately utilized [her] adjudicative duties to resolve," and that carrying and lifting necessarily incorporate grasping and gripping. Dkt. No. 16 at 4 (citation omitted). The Commissioner also points to Mr. Turner's consultative exam with Dr. Degamo, in which Mr. Turner's grip strength ranged from 81 to 100 pounds in his right hand and 90 to 98 pounds in his left hand. *Id.* at 4–5. The Commissioner argues that nothing in the record indicates that "forceful" gripping would require gripping more than 50 pounds and that a laundry worker "would not need to grip and grasp more than 50 pounds occasionally . . . ." *Id.* at 5.

The Court does not find any of the Commissioner's arguments persuasive. The ALJ did not in any way indicate that she found Dr. Degamo's use of the word "forceful" ambiguous enough to create a conflict that the ALJ was required to resolve, or that carrying and lifting encompass grasping and gripping. Dr. Degamo's use of the term "forceful" does not clearly explain whether occasional "forceful" gripping means that Mr. Turner is able to grip more or less than 50 pounds occasionally. Furthermore, the DOT only discusses reaching, handling, fingering, and feeling—not grasping or gripping. *See 381.687-034 Waxer, Floor*, <u>Dictionary of Occupational Titles</u>, 1991 WL 673262 (4th ed. 1991); *311.677-018 Dining Room Attendant*, <u>Dictionary of Occupational Titles</u>, 1991 WL 672696 (4th ed. 1991); *361.684-014 Laundry Worker*

10

*I*, Dictionary of Occupational Titles, 1991 WL 672983 (4th ed. 1991). Thus, nothing in the DOT supports the Commissioner's assertion that a laundry worker would not need to grip or grasp more than 50 pounds occasionally. At any rate, none of these justifications appears in the ALJ's opinion, and the Commissioner may not invoke them now as support for the ALJ's opinion. *Bray*, 554 F.3d at 1226 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Commissioner cites three cases in support of his contention that courts have rejected plaintiffs' arguments seeking remand based on a gripping limitation. Dkt. No. 16 at 5 (citing *Bice v. Astrue*, No. ED CV 10-1826 PJW, 2011 WL 4436224 (C.D. Cal. Sept. 23, 2011); *Robles v. Colvin*, No. 1:14-cv-00285-SMS, 2014 WL 7447764 (E.D. Cal. Dec. 31, 2014); *Summers v. Comm'r of Soc. Sec.*, No. CIV S-08-1309-CMK, 2009 WL 2051633 (E.D. Cal. July 10, 2009)). In *Bice*, the plaintiff argued that he was unable to perform cashier, office clerk, and storage facility rental clerk positions because those positions required frequent forceful grasping and torqueing with his left arm. 2011 WL 4436224, at *1. The court rejected that argument because the DOT descriptions did not include a requirement of forceful grasping or torqueing, and because plaintiff was right-handed. *Id.* In *Robles*, the court rejected the plaintiff's argument that the vocational expert's testimony was inconsistent with the DOT based on the plaintiff's conflation of "occasional forceful gripping and grasping" with "handling" as described in Social Security Ruling ("SSR") 85-15.[3] 2014 WL 7447764, at *6–7. In fact, the *Robles* court listed numerous cases from courts in the Ninth Circuit and beyond that have generally declined to equate handling with forceful gripping and gasping. *Id.* at *7 (listing cases). Finally, *Summers* concerns a limitation of "no frequent forceful overhead reaching with the left upper extremity"—not grasping

---

[3] SSR 85-15 describes "handling" as "seizing, holding, *grasping*, turning or otherwise working primarily with the whole hand or hands." SSR 85-15, 1985 WL 56857, at *7 (S.S.A. 1985) (emphasis added). "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted). The ALJ's decision does not mention SSR 85-15. *See* AR 50.

11

or gripping. 2009 WL 2051633, at *21–23. None of these cases stands for the proposition that an RFC for medium work adequately accounts for a limitation of occasional "forceful" grasping or gripping as Dr. Degamo describes, and therefore the Commissioner's cases have limited persuasive value.

The Court considers 20 C.F.R. § 416.967, which describes the classification of work as sedentary, light, medium, heavy, and very heavy. Although the regulation addresses sitting, walking, standing, lifting, and carrying, it does not discuss grasping or gripping. *See* 20 C.F.R. § 416.967. It is unclear whether the ALJ's reference to "handling" means that the ALJ believed lifting and carrying includes grasping and gripping, or whether she concluded that "forceful" grasping or gripping means grasping or gripping in excess of 50 pounds. The ALJ thus failed to explain how a restriction to medium work addresses Mr. Turner's limitation to occasional forceful grasping or gripping. Accordingly, the Court finds that substantial evidence does not support the ALJ's stated RFC.

### 2. The ALJ's hypotheticals to the vocational expert

An ALJ posing a hypothetical question to a vocational expert "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)); *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Magallanes*, 881 F.2d at 756. A hypothetical that omits any of the claimant's limitations is not "accurate, detailed, and supported by the medical record." *Tackett v. Apfel,* 180 F.3d 1094, 1101 (9th Cir. 1999); *see also Lewis v. Apfel*, 236 F.3d 503, 517–18 (9th Cir. 2001) (finding improper ALJ's reliance on vocational expert's response to a hypothetical question that did not include all of claimant's impairments, even though another hypothetical question the ALJ asked had accounted for all of claimant's impairments). If the hypothetical is not supported by the record, the vocational expert's opinion "has no evidentiary value." *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988).

Here, the parties do not dispute that the medical evidence of record supported Mr. Turner's grasping and gripping limitations. *See* Dkt. Nos. 14, 16. However, the ALJ's hypotheticals posed

12

to the vocational expert at the hearing did not include those limitations. As discussed above, the ALJ's RFC of medium work does not account for grasping or gripping limitations. *See supra* Section III.B.1. Accordingly, the Court finds that the hypotheticals posed to the vocational expert lacked support in the record and thus the vocational expert's opinion had no evidentiary value. *Embrey*, 849 F.2d at 422; *see also Hadnot v. Astrue*, No. C 07-5504 PJH, 2008 WL 5048428, at *11–12 (N.D. Cal. Nov. 25, 2008) (finding error where ALJ's hypothetical omitted supported limitation).

The Court grants Mr. Turner's motion for summary judgment and denies the Commissioner's motion for summary judgment on this point.

### C. The ALJ's Step Five Analysis

Mr. Turner argues that the vocational expert's testimony was not consistent with the DOT and that the ALJ therefore erred in relying on that testimony. Dkt. No. 14 at 4–5. Specifically, Mr. Turner says that the dining attendant and floor waxer positions exceed the level of functioning that the ALJ proposed: the ALJ's hypothetical was limited to frequent reaching, handling, fingering, and feeling and occasional kneeling, but according to the DOT, the dining attendant position requires constant reaching and handling, and the floor waxer position requires frequent kneeling. *Id.*

The Commissioner responds that even if the dining room attendant and floor waxer positions are not appropriate under the ALJ's hypotheticals and RFC, the laundry worker position is still appropriate, given Mr. Turner's limitations. Dkt. No. 16 at 2–3. Therefore, the Commissioner says, any error with respect to the dining room attendant and floor waxer positions is harmless because Mr. Turner can still perform the laundry worker position, for which there are 56,600 positions nationally. *Id.*

On reply, Mr. Turner argues that the vocational expert's error concerning the dining room attendant and floor waxer positions means that the entirety of the vocational expert's testimony is suspect. Dkt. No. 18 at 2. Mr. Turner primarily falls back on his earlier argument that the RFC and hypothetical questions were incomplete with respect to grasping and gripping. As discussed above, the Court has found that the ALJ erred in formulating the RFC and in posing hypotheticals

1   to the vocational expert. *See supra* Section III.B. Because the vocational expert did not receive
2   accurate hypotheticals, the ALJ's reliance on his opinion with respect to any of the positions was
3   error.

4   Accordingly, the Court grants Mr. Turner's summary judgment motion and denies the
5   Commissioner's summary judgment motion based on the Court's determination that the ALJ erred
6   with respect to the RFC and hypotheticals to the vocational expert.

## IV. DISPOSITION

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). That is because "an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the testimony as true." *Treichler*, 775 F.3d at 1106.

The Court may order an immediate award of benefits only if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Leon*, 880 F.3d at 1045 (quoting *Garrison*, 759 F.3d at 1020). Next, the Court "determine[s] 'whether there are outstanding issues that must be resolved before a determination of disability can be made . . . and whether further administrative proceedings would be useful.'" *Id*. (quoting *Treichler*, 775 F.3d at 1101). "When these first two conditions are satisfied, [the Court] then credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id*. Even when all three conditions are satisfied and the evidence in question is credited as true, it is within the district court's discretion whether to make a direct award of benefits or to remand for further proceedings when the record as a whole creates serious doubt as to disability. *Id*. As explained by the Ninth Circuit, "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id*. at 1044.

In the present case, the first condition is met because the Court has found that the ALJ

14

failed to provide legally sufficient reasons for finding that an RFC for medium work adequately accounts for Mr. Turner's grasping and gripping limitations. However, there are outstanding issues that must be resolved before a final determination can be made. The ALJ must reassess Mr. Turner's RFC and, if she so concludes, provide legally adequate reasons for finding that an RFC of medium work accounts of a limitation to occasional forceful grasping and gripping. If, after such reassessment, the ALJ revises the RFC, she must elicit new testimony from the vocational expert based on that revised RFC.

## V. CONCLUSION

Based on the foregoing, Mr. Turner's motion for summary judgment is granted in part and denied in part, the Commissioner's cross-motion for summary judgment is granted in part and denied in part, and this matter is remanded for further proceedings consistent with this order. The Clerk of the Court shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: March 13, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge